Alexander J. Lindvall (#034745)
CITY OF MESA ATTORNEY'S OFFICE
P.O. Box 1466
Mesa, Arizona 85211
Telephone: (480) 644-2343
mesacityattorney@mesaaz.gov

Attorneys for Defendants Pew and Rozema

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| Cole Joseph Spencer, | Case No. 2:20-cv-00385-DGC-CDB |
|---|---|
| Plaintiff, | **Motion for Summary Judgment on Behalf of Defendants Aaron Pew and Jacob Rozema** |
| v. | |
| Aaron Pew et al., | Oral Argument Requested |
| Defendants. | |

This is a § 1983 excessive-force case brought by a prisoner. Officers Pew and Rozema are entitled to summary judgment because they did not violate any of the plaintiff's clearly established rights. As such, they are entitled to qualified immunity and must be dismissed from this case.

**A.     DEFENDANTS' STATEMENT OF FACTS**

Defendants Aaron Pew and Jacob Rozema are police officers employed by the City of Mesa Police Department. [SOF ¶ 1.] On March 21, 2018, Officer Aaron Pew and Officer Jacob Rozema pulled over a vehicle for making an unsafe and illegal traffic maneuver. [SOF ¶ 3.] The driver of this vehicle pulled out of a driveway in front of the officers' squad car, and Officer Pew had to slam on his brakes to avoid hitting this vehicle. [SOF ¶ 3.] The plaintiff was the front-seat passenger in this vehicle. [SOF ¶ 4.]

While speaking with the occupants of this vehicle, Officer Pew noticed that the plaintiff appeared to be extremely nervous. [SOF ¶ 5.] He was heavily sweating and seemed to be looking to a nearby residential area, as if he were looking for a potential escape route. [SOF ¶ 5.] Officer

Rozema asked the plaintiff to identify himself. [SOF ¶ 6.] The plaintiff identified himself to Officer Rozema as "Kenneth Cory." [SOF ¶ 7.] An onsite records check, however, revealed that the plaintiff was lying about his identity, and it was later revealed that his true identity was Cole Joseph Spencer. [SOF ¶ 8.] Realizing that the plaintiff had given him a fake name, Officer Rozema asked the plaintiff to exit the vehicle. [SOF ¶ 9.] Officer Rozema informed the plaintiff that he was being placed under arrest for "false reporting" in violation of Arizona law. [SOF ¶ 10.]

When Officer Rozema attempted to handcuff the plaintiff, the plaintiff quickly turned around, shoved Officer Rozema in the chest, and began to run away from the scene. [SOF ¶ 11.] Officer Rozema quickly caught up to the plaintiff and tackled him to the ground. [SOF ¶ 12.] The plaintiff then flipped over onto his back and swung his fist at Officer Rozema's face several times and attempted to throw Officer Rozema off him. [SOF ¶ 13.] Officer Pew then ran around the vehicle to assist Officer Rozema, leaving the vehicle's driver unsupervised. [SOF ¶ 14.]

Officer Pew and Officer Rozema then proceeded to wrestle with the plaintiff, attempting to get him in handcuffs, but the plaintiff continued to actively resist and fight with these officers. [SOF ¶ 16.] Officer Pew and Officer Rozema repeatedly ordered the plaintiff to "give up his hands," but the plaintiff continued to fight with the officers to avoid being arrested. [SOF ¶ 16.] After wrestling with the plaintiff for roughly a minute, Officer Pew struck the plaintiff in the head, attempting to momentarily daze him so he could be handcuffed. [SOF ¶ 17.] The plaintiff, however, was again unphased and continued to aggressively fight with Officers Pew and Rozema. [SOF ¶ 17.]

Officer Pew then tased the plaintiff in "probe" mode, hoping the electric shock from the taser would subdue the plaintiff for a moment so that he could be handcuffed. [SOF ¶ 18.] This initial taser shock had no effect on the plaintiff. [SOF ¶ 19.] The plaintiff grabbed the taser's probes, ripped them off his body, threw them aside, and continued wrestling with Officers Pew

and Rozema. [SOF ¶ 20.] Officer Pew then tased the plaintiff approximately three more times in "drive-stun" mode, but these shocks again had no discernable effect on the plaintiff, and he continued to fight with the officers. [SOF ¶ 21.]

Around this time, two Maricopa County Sheriff's deputies arrived on the scene to assist Officers Pew and Rozema. [SOF ¶ 22.] One of the deputies helped Officers Pew and Rozema detain the plaintiff, while the other deputy kept an eye on the vehicle's driver. [SOF ¶ 22.] After approximately three-and-a-half minutes of wrestling with the plaintiff, these three officers were able to handcuff the plaintiff. [SOF ¶ 23.] Both Officers Pew and Rozema were physically exhausted after this fight. [SOF ¶ 24.]

Given their experience in law enforcement, it seemed clear to both Officer Pew and Officer Rozema that the plaintiff was under the influence of powerful drugs. [SOF ¶ 25.] The plaintiff had an extremely high pain tolerance and what seemed like superhuman strength. [SOF ¶ 25.] It was later determined that the plaintiff was under the influence of methamphetamines and dimethyltryptamine (DMT). [SOF ¶ 26.] The plaintiff later admitted to Officer Rozema that he had smoked DMT about four minutes before this incident, which made him completely "out of it." [SOF ¶ 27.]

Methamphetamines and heroin were later found in the plaintiff's backpack. [SOF ¶ 28.] The plaintiff subsequently pleaded guilty to second-degree burglary, third-degree burglary, and aggravated assault. [SOF ¶ 29.] In his RFA responses, the plaintiff admitted that he committed aggravated assault against Officer Jacob Rozema" on the date of the incident. [SOF ¶ 29.] He is currently an inmate at the state prison in Florence, Arizona. [SOF ¶ 30.]

B. **QUALIFIED IMMUNITY**

There are two issues in a case involving qualified immunity: (1) whether the facts show the violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the violation. *Pearson v. Callaghan*, 555 U.S. 223, 232 (2009); *Lal v. California*, 746

F.3d 1112, 1116 (9th Cir. 2014).  As shown below, Officers Pew and Rozema are entitled to qualified immunity because they did not violate any of the plaintiff's clearly established rights.

> **1.** **Officers Pew's and Officer Rozema's use of force was objectively reasonable under the circumstances.**

The *Graham* factors all tip in the officers' favor because the plaintiff, while high on mind-altering drugs, was physically fighting with officers to avoid being arrested for a serious crime. Additionally, the available caselaw shows that Officers Pew and Rozema acted reasonably, because the courts have held that more serious uses of force do not offend the Fourth Amendment, especially when the officers are dealing with a suspect who is intoxicated and uncooperative.

> **a.** **The three *Graham* factors all tip in the officers' favor.**

The ultimate touchstone in a use-of-force case—as in all Fourth Amendment cases—is whether the officers' conduct was objectively unreasonable under the circumstances. *Scott v. Harris*, 550 U.S. 372, 383 (2007); *see also Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness'"). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  And "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

As the Ninth Circuit has explained, "an officer need not have perfect judgment, nor must he resort only to the least amount of force necessary to accomplish legitimate law enforcement objectives."  *Bryan v. MacPherson*, 630 F.3d 805, 818 (9th Cir. 2010). "Whether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue." *Forrester v. City of San Diego*, 25 F.3d 804, 808 (9th Cir. 1994).

Rather, the only germane issue is whether the officers' conduct was unconstitutionally excessive given the "range of force" that may have been reasonable under the circumstances. *Bryan*, 630 F.3d at 818.

When determining whether an officer's use of force was "excessive" or "unreasonable," the courts look to three main factors: (1) the seriousness of the crime at issue; (2) whether the suspect posed an immediate threat to the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396. The Ninth Circuit has also directed the courts to consider the suspect's apparent intoxication when analyzing excessive-force cases. *Robinson v. Solano Cty.*, 278 F.3d 1007, 1014 (9th Cir. 2002); *Gonzalez v. City of Anaheim*, 747 F.3d 789, 804 (9th Cir. 2014) (recognizing that issues of officer safety have "even greater salience" when a suspect is intoxicated).

All three *Graham* factors tip in the officers' favor. First, when the officers resorted to physical force, the plaintiff was being arrested for a serious crime. Although the plaintiff was initially arrested for a relatively minor crime (false reporting), once he shoved and struck Officer Rozema, he was being arrested for aggravated assault and resisting arrest. These are both serious felonies, and the officers were justified in using physical force to restrain the plaintiff.

Second, the plaintiff posed a risk of harm to the officers. The plaintiff was actively trying to harm the arresting officers. As Officer Pew described in his report: "It was obvious to me [that the plaintiff] was willing to do anything, including active violence toward a police officer[,] to avoid arrest." The plaintiff, as the initial aggressor, struck Officer Rozema in the face and proceeded to wrestle and fight the officers for roughly three-and-a-half minutes. During this three-and-a-half-minute wrestling match—as with most officer-involved altercations—the officers' service weapons were in the open and within the suspect's reach. The Ninth Circuit has repeatedly stated that officer safety is the "most important" consideration in use-of-force cases. *Isayeva v. Sacramento Sheriff's Dept.*, 872 F.3d 938, 947 (9th Cir. 2017); *George v. Morris*, 736 F.3d 829,

838 (9th Cir. 2013); *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). This altercation had the potential to turn deadly at any moment, especially because the plaintiff was exhibiting erratic, violent, and unpredictable behavior. As such, these officers were justified in using physical force to protect themselves and others.

Third, the plaintiff was actively resisting arrest and attempting to flee. Even before the officers attempted to place the plaintiff under arrest, he was sweaty, nervous, and appeared to be looking at the area nearby to plan out his escape path. And once the officers attempted to handcuff the plaintiff, he struck his arresting officer and began to run toward the nearby residential area. Additionally, because of the plaintiff's drug use, he was extremely difficult to detain. In his report, Officer Pew stated that the plaintiff "was not feeling any pain" and seemed to have "superhuman strength." Given the plaintiff's drug-fueled rage and increased pain tolerance, the officers were justified in using a greater-than-normal level of force to subdue the plaintiff. The officers were not acting out of malice toward the plaintiff, but rather were using the force necessary to subdue someone who was "out if it" on hallucinogens.

Because all three *Graham* factors tip in the officers' favor, they were constitutionally justified in using force against the plaintiff. And because the plaintiff was "out of it" on mind-altering drugs—thereby increasing his strength and pain tolerance—the officers were justified in using a greater-than-normal amount of force to detain the plaintiff. Because the officers' use of force was reasonable under *Graham*, they did not violate the plaintiff's Fourth Amendment rights and are entitled to summary judgment.

### b. Existing caselaw favors the officers.

The available caselaw further shows that the officers' use of force was reasonable in this case. *See*, *e.g.*, *Beaver v. City of Federal Way*, 301 Fed. Appx. 704, 705 (9th Cir. 2008) (finding that officers acted reasonably when they tased an intoxicated, resistive suspect five times); *Cadena v. Ray*, 728 Fed. Appx. 293, 295–96 (5th Cir. 2018) (finding it was reasonable for three officers

to body-slam, wrestle, and tase a suspect because the suspect was intoxicated and belligerent); *Johnson v. City of Philadelphia*, 837 F.3d 343, 350 (3d Cir. 2016) (holding that it was reasonable for an officer to use deadly force against a suspect because the suspect was high on PCP, initiated a physical altercation with the officer, and appeared to reach toward the officer's gun).

In *Beaver*, 301 Fed. Appx. at 705, for example, the Ninth Circuit found that officers acted reasonably when they tased a noncooperative suspect five times. There, a suspect was fleeing a residential burglary. *Id.* When officers eventually caught the suspect, they tackled him to the ground, but the suspect refused to give up his hands, largely because he was "highly intoxicated on drugs." *Id.* at 705–06. The officers then proceeded to tase the suspect until he gave up his hands. *Id.* The suspect subsequently sued the officers under § 1983, arguing they had used excessive force during his arrest. *Id.* at 705. The district court granted the officers' motion for summary judgment. *Id.* On appeal, the Ninth Circuit affirmed, holding that the officers were justified in using the taser because the suspect had committed a serious crime, attempted to flee, and was noncompliant once caught. *Id.*

Similarly, in *Cadena*, 728 Fed. Appx. at 295–96, the Fifth Circuit found that three officers acted reasonably when they body-slammed, wrestled, kneed, and tased a suspect because the suspect was intoxicated and acting belligerent. In *Cadena*, three officers were attempting to arrest a suspect for public intoxication. *Id.* at 294. The suspect refused several lawful orders, was shouting loudly, and tried to run away from the arresting officers. *Id.* To effectuate the arrest, one of the officers pushed the suspect against a wall and wrestled him to the ground. *Id.* Once on the ground, the suspect refused to give up his hands, leading the other officers to repeatedly knee and tase him. *Id.* at 294–95. The plaintiff subsequently brought a § 1983 excessive-force claim against these officers. *Id.* at 295.

The district court granted the officers' motion for summary judgment. *Id.* On appeal, the Fifth Circuit affirmed, holding that the officers' greater-than-normal use of force did not violate

the Fourth Amendment. *Id.* at 296. Because the suspect refused to place his hands behind his back and actively resisted the officers, the court found that he posed an immediate threat to the officers' safety. *Id.* Additionally, the suspect's "intoxicated state and erratic behavior gave the [o]fficers further reason to believe he was a threat." *Id.* Given the suspect's belligerent behavior, the court concluded that the officers' use of force "corresponded to [the suspect's] level of resistance, and was thus reasonable." *Id.* at 297.

The Third Circuit also recently found that an officer acted reasonably when he used deadly force against a suspect who was high on PCP and initiated a street-fight with the officer. *Johnson*, 837 F.3d at 350. In *Johnson*, an officer came across a confused, angry man who appeared to be high on drugs. *Id.* at 346. When the officer approached the suspect, he began running toward the officer, shouting. *Id.* The officer tased the suspect several times, but it did not have any effect. *Id.* A "violent struggle ensued," where the officer struck the suspect in the head multiple times, threw him against a parked car, and wrestled him to the ground. *Id.* As they wrestled on the ground, the officer believed the suspect was reaching for his gun. *Id.* The officer then drew his gun and shot the suspect twice in the chest. *Id.* The suspect was not phased and continued struggling with the officer. *Id.* The officer then shot the suspect again, but the suspect kept fighting. *Id.* The officer then shot the suspect for a fourth time, killing him. *Id.*

The district court subsequently granted the officer's motion for summary judgment, finding that he acted reasonably given the circumstances. *Id.* at 348. On appeal, the Third Circuit affirmed, holding that the officer was justified in using deadly force against the suspect because the suspect started a drug-fueled brawl with the officer, causing the officer to reasonably fear for his safety. *Id.* at 350. The *Johnson* Court believed the Fourth Amendment issue was "straightforward" because of the "extraordinary" circumstances the officer faced. *Id.* at 352, 353. Because the suspect (i) initiated the altercation, (ii) exhibited "extraordinary violence," and (iii) was "unfazed" by the officer's taser, the officer was justified in using deadly force—because the Fourth

Amendment "does not oblige an officer to passively endure a life-threatening physical assault, regardless of the assailant's mental state." *Id.* at 353. To borrow the *Cadena* Court's phrasing: the officer's use of force was reasonable because it "corresponded to [the suspect's] level of resistance." *Cadena*, 728 Fed. Appx. at 297.

*Beaver*, *Cadena*, and *Johnson* show that Officer Pew and Officer Rozema acted reasonably in this case. In each of these cases, the officers were justified in using serious (sometimes even deadly) force because their suspects were intoxicated, belligerent, uncooperative, flight-prone, and physically aggressive towards the arresting officers. The same is true in this case. As soon as the plaintiff realized he was going to be arrested, he assaulted the arresting officer and attempted to flee the scene. And like the officers in the cases above, Officer Pew's and Officer Rozema's force always "corresponded to [their suspect's] level of resistance," meaning their actions fell within the bounds of the Fourth Amendment. *Cadena*, 728 Fed. Appx. at 297. There are no meaningful differences between this case and the cases cited above. In those cases, the officers were awarded summary judgment. Accordingly, in this case, Officers Pew and Rozema should be awarded summary judgment as well.

\* \* \* \*

In short, the plaintiff, while high on mind-altering drugs, was physically fighting officers to avoid being arrested for a serious crime. This sort of situation checks all three *Graham* boxes; and Officers Pew and Rozema were justified in using serious physical force to detain the plaintiff. Although the force seen in this case might be unreasonable under normal circumstances, these officers were not faced with normal circumstances. Rather, they faced a violent, drug-fueled suspect with a heightened pain tolerance who started a brawl with his arresting officers. The officers used the force necessary to apprehend the plaintiff given the circumstances, and their force always "corresponded to [the plaintiff's] level of resistance." *Cadena*, 728 Fed. Appx. at 297. This is all the Fourth Amendment requires.

**2.  There is no "clearly established" law showing that the officers' force was unconstitutionally excessive.**

Once an officer raises the defense of qualified immunity, "the plaintiff bears the burden of proof regarding whether the right is clearly established." *DiRuzza v. Cty. of Tehama*, 206 F.3d 1304, 1313 (9th Cir. 2000). In this regard, the plaintiff is required to show that the law that existed at the time of the alleged violation had placed the relevant constitutional issue "beyond debate," such that "every reasonable official would have understood…that the conduct [at issue] was a violation of a constitutional right." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

The specificity of precedent is "especially important in the Fourth Amendment context" because it is difficult for officers to apply broad, ethereal principles to the complicated factual situations they often confront. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *see also Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) ("[O]vercoming qualified immunity is especially difficult in excessive-force cases."). "Use of excessive force," in other words, "is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix*, 136 S. Ct. at 309). Whether a right was "clearly established" is "solely a question of law for the judge."[1] *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010).

In this case, the plaintiff cannot show that Officers Pew and Rozema violated any of his "clearly established" rights. This case has two aspects that differentiate it from a typical police-suspect interaction: (i) the plaintiff was "out of it" on hallucinogenic drugs, which apparently made him irrational, unusually strong, and near-impervious to pain; and (ii) the plaintiff initiated a brawl

---

[1] The Supreme Court has also admonished the lower courts to decide issues of qualified immunity at "the earliest possible stage in litigation" to keep court costs down and to ensure that officers aren't forced to respond to unnecessary discovery. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

by shoving and then punching his arresting officer. An extensive search of federal caselaw did not reveal any precedent favorable to the plaintiff that "squarely governs" this case. In fact, as shown above, the available caselaw holds that officers should be given extensive leeway when dealing with intoxicated, unpredictable suspects, and that these officers should almost always be awarded immunity. *See*, *e.g.*, *Cadena*, 728 Fed. Appx. at 295–96; *Beaver*, 301 Fed. Appx. at 705; *Johnson*, 837 F.3d at 350; *see also Gonzalez v. City of Anaheim*, 747 F.3d 789, 804 (9th Cir. 2014) (recognizing that issues of officer safety have "even greater salience" when the suspect is intoxicated).

Likewise, in *Griggs v. Brewer*, 841 F.3d 308, 314–15 (5th Cir. 2016), the Fifth Circuit awarded immunity to an officer who punched, kicked, and tackled a noncooperative drunk-driving suspect because the suspect was noncompliant and resisted arrest. In *Griggs*, the officer stopped a suspect for running a red light. *Id.* at 311. The officer smelled alcohol on the suspect and believed that he was intoxicated. *Id.* The officer eventually decided to arrest the suspect for drunk driving after he failed a sobriety test. *Id.* When the officer attempted to handcuff the suspect, however, the suspect "lurched to the side" and would not give up his hands. *Id.* The officer immediately "performed a 'takedown' maneuver and threw [the suspect] face-down onto the [ground] and landed on top of him." *Id.* When the suspect still refused to give up his hands, the officer "punched [the suspect] with a closed fist to the back of the head" several times. *Id.* The suspect subsequently sued the officer for excessive force. *Id.*

The district court granted the officer's motion for summary judgment, finding that he was entitled to qualified immunity. *Id.* On appeal, the Fifth Circuit affirmed, finding both that the officer's conduct was reasonable and that there was no "clearly established" law that proscribed his conduct. *Id.* at 314–15. Although the officer's "actions may not have been as restrained as we would like," the court reasoned, "qualified immunity 'protect[s] officers from the sometimes hazy border between excessive and acceptable force.'" *Id.* at 315 (quoting *Saucier v. Katz*, 533 U.S.

194, 206 (2001)).  And because the officer's "use of force was the sort of 'split-second judgment' in a difficult situation that qualified immunity [was] designed to protect," the court found that summary judgment was appropriate. *Id.* at 316 (citing *Graham*, 490 U.S. at 396–97).

Similarly, in *Donovan v. Phillips*, 685 Fed Appx. 611, 613 (9th Cir. 2017), the Ninth Circuit awarded immunity to an officer who body-slammed a noncooperative, intoxicated suspect.  In *Donovan*, the officer pulled over a vehicle on suspicion of drunk driving. *Id.* at 612.  While the officer was administering a sobriety test on the driver, the vehicle's passenger exited the vehicle. *Id.*  After the passenger "failed to comply with [the officer's] repeated orders to remain in her vehicle," the officer bear-hugged the passenger and threw her to the ground. *Id.*  The passenger subsequently sued the officer for excessive force. *Id.*

The district court granted the officer's motion for summary judgment, finding that he was entitled to qualified immunity. *Id.*  On appeal, the Ninth Circuit affirmed, holding both that the officer's force was reasonable and that there was no clearly established law to the contrary. *Id.* at 612–13.  Although the passenger "made no aggressive movements towards" the officer, the *Donovan* Court nonetheless found that the officer "had a substantial interest in taking the necessary steps to secure [the passenger] quickly once she exited her car," because traffic stops are "fraught with danger to police officers," especially when the suspect(s) may be intoxicated. *Id.*  The court went on to hold that the officer would be entitled to immunity even if the court assumed the his use of force was excessive, because "it was not beyond debate that the totality of the circumstances surrounding [the officer's] seizure of [the suspect] would indicate that his use of force was clearly unreasonable." *Id.* at 613.

The same is true in this case.  For one, as outlined above, the officers' use of force in this case was reasonable under the circumstances because the plaintiff was intoxicated, belligerent, uncooperative, flight-prone, and physically aggressive towards his arresting officers.  So, although the officers used an above-average amount of force, this force always "corresponded to [their

suspect's] level of resistance, and was thus reasonable." *Cadena*, 728 Fed. Appx. at 297.

Additionally, because the available caselaw emphatically tips in the officers' favor, the plaintiff cannot show that his "clearly established" rights were violated. These officers were in the sort of "tense, uncertain, and rapidly evolving" situation that qualified immunity was designed to safeguard. *Griggs*, 841 F.3d at 316; *Graham*, 490 U.S. at 397. And because the plaintiff cannot point to any favorable precedent case that "squarely governs" the circumstances seen in this case, the officers are entitled to summary judgment.

\* \* \* \*

"[O]vercoming qualified immunity is especially difficult in excessive-force cases." *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019). To overcome this defense, the plaintiff must make "an extraordinary showing"—i.e., he must show that "existing precedent 'squarely governs'" this case and clearly entitles him to relief. *Id.* (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)). The plaintiff cannot meet this burden. Given the above-referenced caselaw, there is no way for this Court to conclude that "every reasonable official would have understood, beyond debate, that [Officer Pew's and Officer Rozema's] conduct was a violation of a constitutional right." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). To the contrary, the caselaw shows that the level of force seen in this case was surely reasonable—especially when you consider the plaintiff's aggressive behavior, unusual pain tolerance, and unhinged mental state. Accordingly, because Officers Pew and Rozema did not violate any of the plaintiff's clearly established rights, they are entitled to qualified immunity and summary judgment in their favor.

C. **CONCLUSION**

Qualified immunity is designed to protect officers who were forced to make split-second decisions during a dicey situation. *Griggs*, 841 F.3d at 316. In all the cases discussed in this motion—*Beaver*, *Cadena*, *Johnson*, *Griggs*, and *Donovan*—the defendant-officers were awarded

summary judgment because they dealt with intoxicated, belligerent, uncooperative, flight-prone, and physically aggressive suspects. Officers Pew and Rozema confronted the same sort of suspect in this case—a suspect who assaulted his arresting officer then challenged three officers to a three-and-a-half-minute-long, drug-fueled wrestling match. Because this case is not meaningfully different from the cases cited in this motion, Officers Pew and Rozema should be awarded summary judgment as well.

**ACCORDINGLY,** because Officers Pew and Rozema did not violate any of the plaintiff's clearly established rights, they respectfully ask this Court to enter summary judgment in their favor.

DATED this 26th day of August 2020.

CITY OF MESA ATTORNEY'S OFFICE

Alexander J. Lindvall
Assistant City Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2020, I served the attached document by mail on the following, who is not a registered participant of the CM/ECF System:

Cole Joseph Spencer #226871
ASPC – Eyeman / Rynning Unit
4374 E. Butte Avenue
P.O. Box 3500
Florence, AZ  85132-3500
*Pro Se Plaintiff*

/s/ Toni Aglialoro