IN THE UNITED STATES DISTRICT COURT OF ARIZONA

Cole J. Spencer
    Plaintiff,

CV-20-00385-DGC-CDB

VS.

Aaron Pew, et al.,
    Defendants

☒ FILED      ☐ LODGED

**Sep 03 2020**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

Response To Defendants Motion For Summary Judgement

    Plaintiff has received Defendants motion for summary Judgement. Plaintiff is respectfully requesting additional time to attain the discovery needed to dispute Defendants facts. The following is a Declaration, explaining what Discovery I need and why I do not have it yet.

## DECLARATION

    I Cole Spencer, swear that the following is true. The following is a list of Discovery Needed to argue Defendants Motion.

① "un-Altered Body-cam footage": Because defendants Pew and Rozema were not wearing cameras, I am relying on MCSO defendants camera footage. I was sent 4 videos with altered footage. I now have filed a motion (9-1-20) requesting permission to serve "Axon" with a subpoena to Attain the said footage. Defendants Shall and Macklin (MCSO) claim that officer Rozema's Face was blurred out in the video because he was a victim in my criminal Case, but many more objects are blurred out. Another key factor is the fact that D.O.C. also viewed the footage and once they witnesed what happened, there is now a standing order that I cannot view any evidence without a court order to do so. The is relevant to disputing the defendants motion, as it is the most important peice of evidence in my case and will proove my case.

② "Banner Medical Records": Defendants claim that I was on a Drug "DMT" That I have never heard of. These medical records will proove that I was on No Such substance. Enclosed is "Exhibit A". This is a letter from the MCSO Defendants informing me that I needed to submit another records release request For my medical records. Its been 40 Days and I have heard nothing. At this point I Beleive

that even if MCSO produces the records, they will not be complete. I now have a friend obtaining the medical records. I got a power-of-Attorney Notarized and am waiting for her to drive to both hostpitals.

③ "Mesa Fire Department and Southwest Ambulance Reports" similar to the Banner Medical Reports, these Documents are vital to prooving what I said, as the Defendants claim I told EMTs that I was on Drugs. Me being on a Hullucenogen is the basis of their claim. Most of the case law cited pertains to individuals on PCP and alcohol. Disputing that Fact is Key. like the Medical Records. A friend of mine who recently came back in my life is helping me attain these.

④ "Department Policies". I requested the complete "use-of-Force Policy and was Given Definitions and Guidlines, as well as a basic overview of "ECD protocalls". All of what they gave me is attatched as "Exhibit B" There you will find: DPM 2.1.1 "use of Force Philosophy and Definitions." And DPM 2.1.1. "use of Force" 5 pages and DPM 2.1.35 "Electronic Control Device" 6 pages. As you will see on D.P.M. 2.1.1 page 1 there is an underligned definition of the "carrotid choke Technique. As well

as D.P.M. 2.1.5. page 2 you will also see an underlined carrotid choke technique. Neither lay out the acceptable applications of the choke Hold or when it is not allowed. This is because the USE of Force Policy is incomplete. I have made RFP's on Aug. 13th and on Sep. 1st requesting the following: (AFter requests made in June for Complete "USE OF FORCE" policy which is the policy sent with this motion. ① Complete USE of Force Training Manual Policy ② Complete "carrotid choke" training Policy ③ Complete "choke Hold" training policy. ④ Complete Tazer/stun-gun training Policy ⑤ Complete Swat team Policy ⑥ Complete policy and Protocalls for officers arresting suspects who are admitted to hostpital, including Miranda policy for hostpitalized suspects, and Police interaction with hostpital staff for unconscious suspects. (included But Not limited to). Not untill I have the policy and the un-altered video from Axon con I compare the two and Determine exactly what laws were broke on their part. which will allow me to dispute their claims.

⑤ "Requests For Admissions and Interrogatorries"
Upon recieving the correct Policy and un-Altered Body-cam footage, I will submit to Defendants written Questions pertaining to violations of said Policy and ask for Responses to the actions laid out in the videos.

Plaintiff is not sure how long all of this will take. He is respectfully asking the court for consideration of the fact that he is incarcerated and the pandemic makes everything slower than Normal. Thankyou.

9-2-2020                    Cole Spencer
                           Cole Spencer (Plaintiff)

Exhibit   A

225 W Madison
PHOENIX, AZ 85003
WWW.MARICOPACOUNTYATTORNEY.ORG

PH.   (602) 506-3411
FAX   (602) 506-8102



# Maricopa County Attorney
## Allister Adel

COLE J SPENCER
#226871
ASPC EYMAN RYNNING
4374 E BUTTE AVE
FLORENCE AZ  85132

July 22, 2020

   Re:  No. 2:20-CV-00385-DGC-CDB

Mr. Spencer:

  Enclosed is a revised  medical authorization form for BannerHealth. A representative from Banner

medical records said that the box titled Organization Who Is Releasing Information should have Banner's

information rather than the County Attorney's, so it has been revised and requires a new signature from

you.   Please fill out this form where highlighted and return to us promptly so that we can request your

Banner medical records. We will send you copies of the records we receive. Thank you.

Sincerely,
ALLISTER ADEL
MARICOPA COUNTY ATTORNEY
*Katarina Gagic*

Katarina Gagic
Paralegal
enclosure

Exhibit B

| MESA POLICE | Use of Force Philosophy & Definitions | DPM 2.1.1 |
|---|---|---|
| Department Policy Manual | | Effective Date 11/29/2012 |
| Approved by: Chief of Police | | Page 1 of 3 |

## 1. PURPOSE

This order provides the Mesa Police Department (MPD) personnel with the philosophy and definitions pertaining to use of force.

## 2. AUTHORITY

In accordance with Arizona Revised Statutes (ARS), police officers possess the legal authority to use reasonable levels of force necessary to lawfully control and/or arrest citizens.

## 3. PHILOSOPHY

- The MPD is committed above all to the sanctity and preservation of life, human rights, the dignity of every individual, and the Constitution of the United States and the State of Arizona. An officer's responsibility for protecting life must include his or her own and those of his or her fellow officers and the general public.

- The decision to use force when conducting official law enforcement responsibilities is among the most critical decisions made by officers. It is a decision that must be made quickly and under difficult, often unpredictable, rapidly changing and unique circumstances.

- The United States Supreme Court has held that the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Force used to gain control of a situation will be used with restraint and in proportion to the resistance offered.

## 4. DEFINITIONS

**Carotid Control Technique:**

A technique designed to render a violent subject unconscious for a short period of time.

**Chemical Agents:**

A substance produced to cause changes to a person's eyes or respiratory passages. Refers to OC spray, SWAT chemical munitions, etc.

**Control Methods:**

Verbal or physical techniques an officer uses in an attempt to neutralize the actions of a subject or to protect the subject from injury to self or others.

Mesa/Spencer 000152

| MESA POLICE | Use of Force Philosophy & | DPM 2.1.1 |
|---|---|---|
| Department Policy Manual | Definitions | Effective Date 11/29/2012 |

| Approved by | | |
|---|---|---|
| Chief of Police | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 2 of 3 |

**Deadly Force: (ARS 13-105.14)**

Force that is used with the purpose of causing death or serious physical injury or in the manner of its use or intended use is capable of creating a substantial risk of causing death or serious physical injury.

**Deadly Weapon: (ARS 13-105.15)**

Anything designed for lethal use, including a firearm.

**De-escalation:**

To diminish or decrease in scope, size, or intensity based on circumstances at that time.

**Electronic Control Device (ECD):**

An electro-muscular disruption device that disrupts the body's ability to communicate messages from the brain to the muscles causing temporary motor skill dysfunction to a subject.

**Escalation:**

To increase in scope, size, or intensity based on circumstances at that time.

**Imminent or Impending Threat:**

- "Imminent" does not mean "immediate" or "instantaneous", but that an action is pending.
- A threat is imminent or impending in circumstances where:
  o It appears that a subject's intent is to cause death and/or serious physical injury to the officer or others, and
  o It appears that the subject has the means or ability to do so, and
  o It appears that the subject has the opportunity and ability to use those means or instrumentalities to cause death or serious physical injury.

**Impact Weapons:**

- Objects and instruments that are used, or are designed to be used, to apply force to the person of another by coming into physical contact with that person.
- Impact weapons include the expandable baton, side-handle baton, and flexible baton (bean bag shotgun).

**Less Lethal Weapons:**

Devices used by members to stop, control, and restrain individuals while causing less harm than deadly force.

| MESA POLICE | Use of Force Philosophy & | DPM 2.1.1 |
|---|---|---|
| Department Policy Manual | Definitions | Effective Date 11/29/2012 |
| Approved By: Chief of Police | | Page 3 of 3 |

**Limited Strikes:**

Strikes applied to limited target areas.  Refer to "Strikes" definition.  Example target areas: brachial plexus (tie-in), radial, median, femoral, common peroneal and tibial nerves.

**Non-Deadly Force: (ARS 13-105.31)**

Force that is used upon or directed toward the body of another person and includes confinement but does not include deadly physical force.  Any application of force that is not reasonably anticipated and is not intended to create a substantial likelihood of death or serious injury shall be considered physical force and non-deadly force.

**Physical Injury: (ARS 13-105.32)**

The impairment of a person's physical condition.

**Police Service Dogs (K-9)**

Police Service Dogs (K-9) may be used when the PSD Handler reasonably believes the use of the PSD is necessary to locate subjects wanted for a serious crime, to protect officers or others from an imminent or actual assault, or in an attempt to prevent suicide.

**Reasonable Belief:**

Means that the facts or circumstances the officer knows, or should know, are such as to cause the ordinary and prudent officer to act or think in a similar way under similar circumstances.

**Resistance:**

The subject's failure to comply with Mesa Police Department personnel's attempt to establish control.

**Serious Physical Injury: (ARS 13-105.38)**

Physical injury that creates a reasonable risk of death or that causes serious and permanent disfigurement, serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb.

**Strikes:**

- Techniques that have more than a minimal chance of injury. (Examples:  Kicks, elbow, palm or knee strikes, and punches).
- The officer will consider the totality of circumstances in evaluating which area of the body to strike.

| MESA POLICE | Use of Force | DPM 2.1.5 |
|---|---|---|
| **Department**<br>**Policy Manual** | | Review Date<br>3/14/2017 |
| Approved by:<br>**Chief of Police** | | Page:<br>1 of 5 |

## 1. PURPOSE

- This order provides Mesa Police Department (MPD) personnel with guidelines for the:
    - Appropriate and acceptable use of force.
    - High degree of officer safety protocols.
    - Reporting guidelines for all uses of force.
    - Treatment of any injury or complaint of injury arising from the use of force.
- Refer to **DPM 2.1.1 Use of Force Philosophy & Definitions** for explanation of use of force terms.

## 2. ARS GUIDELINES

Per guidelines outlined in **ARS 13-409**, **ARS 13-410.C**, and **ARS 13-410.D**, an officer is justified in threatening to use force, using force or using deadly physical force.

## 3. DEFINITIONS

- **Control Holds**: Techniques that have minimal chance of injury. Examples: OCCS, empty hand escort controls, firm grip, pressure points, takedown, etc.

- **Chemical Agents**: Generally, chemical agents are intended to be used as a low force means of obtaining control. Examples: OC spray, SWAT chemical munitions, etc. Refer to **DPM 2.1.30 Chemical Agents** for further information.

- **Limited Strikes**: Strikes applied to limited target areas.  Refer to "Strikes" definition.  Example target areas: brachial plexus (tie-in), radial, median, femoral, common peroneal and tibial nerves.

- **Strikes:**  Techniques that have more than a minimal chance of injury. Examples:  Kicks, elbow, palm or knee strikes, and punches. The officer will consider the totality of circumstances in evaluating which area of the body to strike.

- **TASER (Electronic Control Device):**  Generally, the TASER should be considered in circumstances where a reasonable officer would believe that it is immediately necessary to protect him or another from what that officer reasonably believes is an imminent or actual assault, to prevent suicide, or in excited delirium cases.  Refer to **DPM 2.1.35 Electronic Control Device (ECD) Protocols** for further information.

| **MESA POLICE**<br>Department<br>Policy Manual | **Use of Force** | **DPM 2.1.5**<br>Review Date<br>3/14/2017 |
|---|---|---|
| Approved by:<br>Chief of Police | | Page<br>2 of 5 |

- **Impact Weapons**: Generally, impact weapons are used as an offensive or defensive weapon to protect an officer or another from what the officer reasonably believes is an imminent or actual assault or to prevent suicide. Refer to **DPM 2.1.25 Impact Weapons** and **DPM 2.1.40 Less Lethal Shotgun Protocols** for further information.

- **PSD:** Police Service Dogs (K-9) may be used when the PSD Handler reasonably believes the use of the PSD is necessary to apprehend subjects wanted for a serious crime, to protect officers or others from an imminent or actual assault, or in an attempt to prevent suicide. **Refer to DPM 2.10.30 Police Service Dog (PSD)** and **PSD Unit Manual** for further information.

- **Carotid Control Technique:**
  - This technique is authorized to be used by an officer whenever:
    - Deadly force is authorized; OR
    - When a subject is actively assaulting an officer or another person and other control methods have been exhausted or the officer reasonably believes other methods would be ineffective.
  - Ensure medical attention is obtained as soon possible.

- **Deadly Force:**

- Force that is used with the purpose of causing death or serious physical injury or in the manner of its use or intended use is capable of creating a substantial risk of causing death or serious physical injury.

- While the use of a firearm is expressly considered deadly force, other force (vehicles, impact weapons, etc.) might also be considered deadly force if the officer reasonably anticipates that the force applied will create a substantial likelihood of causing death or serious physical injury.

- **Dangerous Fleeing Felon**: The officer reasonably believes that it is necessary to prevent the escape of a fleeing subject and the officer reasonably believes that:
  - The subject has committed a felony involving the infliction or threatened infliction of serious physical injury or death; and
  - The escape of the subject would pose an imminent danger of death or serious physical injury to the officer or to another person.

**4. USE OF FORCE FACTORS**

| MESA POLICE | **Use of Force** | DPM 2.1.5 |
|---|---|---|
| Department Policy Manual | | Review Date 3/14/2017 |
| Approved By: Chief of Police | ████████████ | Page: 3 of 5 |

- Officers must consider the totality of circumstances in evaluating whether force is necessary and what level of force would be reasonable before using a particular force option.

- Factors that may be considered include, but are not limited to:

  o The risk and reasonably foreseeable consequences of escape.

  o The conduct of the individual being confronted as reasonably perceived by the officer at the time.

  o The seriousness of the suspected offense or reason for contact with the individual.

  o The officer's and subject's factors, including, but not limited to: age, size, relative strength, skill level, injuries sustained, level of exhaustion or fatigue and number of officers versus subjects.

  o The influence of drugs or alcohol and the mental capacity of the subject.

  o The proximity of weapons.

  o The distance of the subject to the officer.

  o The degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained.

  o Time and circumstances permitting, the availability of other options (what resources are reasonably available to the officer under the circumstances) not inclusive of the following:

    ▪ *The availability of cover.* An armed suspect attempting to gain a position of cover may necessitate the use of deadly force; conversely, an officer in a position of cover may gain additional time to assess the need to use deadly force without incurring significant additional risks.

    ▪ *Time constraints.* The time delay between a suspect's actions and an officer's reaction can determine whether a hesitation in the use of force will place the officer or others at an unacceptable disadvantage. The time delay between the use of force and the "stopping" of the suspect's actions may also play a critical part in determining whether there is a safe alternative to the use of force.

  o The training and experience of the officer.

  o The potential for injury to citizens, officers, and suspects.

| MESA POLICE<br>Department<br>Policy Manual | **Use of Force** | DPM 2.1.5<br>Review Date<br>3/14/2017 |
|---|---|---|
| Approved By:<br>Chief of Police | | Page:<br>4 of 5 |

- o Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the officer or others.

- o Prior knowledge of the subject's propensity for violence.

- o Any other exigent circumstances.

## 5. MEDICAL TREATMENT AFTER USE OF FORCE

- Ensure medical treatment is provided when appropriate.

- Prior to booking or release, medical assistance shall be obtained for:

  - o Any person who has sustained visible injury; or

  - o Expressed a complaint of injury or continuing pain; or

  - o Has been rendered unconscious.

## 6. REPORTING GUIDELINES

- **Reportable force applications include:**
  - o All instances in which a Department member uses force, other than verbal commands and control holds, on subjects shall be reported; OR
  - o When a member uses force and a person is injured, or thought to be injured, or the person requests medical aid, whether or not an injury is apparent.

- **Officer involved shooting incidents or police incidents resulting in serious injury or death:**

  - o Refer to **DPM 2.1.10 Police Incidents Involving Death/Serious Injury** for member responsibilities and guidelines when responding to an officer involved shooting or police incident resulting in serious injury or death.

- **All other reportable force incidents:**
  - o Any on duty reportable use of force incident by a Department member shall be documented promptly, completely and accurately in an appropriate report. Refer to **DPM 2.1.45 Use of Force Reporting Protocols**.

- **Reportable force application off duty:**
  - o Any officer that uses force in an off duty incident shall immediately notify the appropriate local authorities and his/her chain of chain of command
  - o The officer shall also prepare and submit:

| MESA POLICE<br>**Department<br>Policy Manual** | **Use of Force** | **DPM 2.1.5**<br>Review Date<br>3/14/2017 |
|---|---|---|
| Approved by:<br>Chief of Police | | Page:<br>5 of 5 |

> - ■ A Department Report (DR) or supplement report if it occurred in City of Mesa (COM). Each officer involved in that use of force incident shall submit a supplemental report.
> - ■ A memo to affected Division Commander documenting the incident if it occurred outside City of Mesa (COM).

**References:**

- DPM 2.1.1 Use of Force Philosophy & Definitions
- DPM 2.1.10 Police Incidents Involving Death/Serious Injury
- DPM 2.1.20 Firearms Use
- DPM 2.1.25 Impact Weapons
- DPM 2.1.30 Chemical Agents
- DPM 2.1.35 Electronic Control Device (ECD) Protocols
- DPM 2.1.40 Less Lethal Shotgun Protocols
- DPM 2.1.45 Use of Force Reporting Protocols
- DPM 1.11.60 Use of Force Board
- DPM 2.10.30 Police Service Dog (PSD)
- PSD Unit Manual

Mesa/Spencer 000151

| MESA POLICE | Electronic Control Device | DPM 2.1.35 |
|---|---|---|
| Department Policy Manual | (ECD) Protocols | Revision Date 3/14/2017 |
| Approved by Chief of Police | | 1 of 6 |

## 1. PURPOSE

- This order provides Mesa Police Department (MPD) personnel with direction and guidelines for the use of the Electronic Control Devices (ECD).
- Refer to **DPM 2.1.1 Use of Force Philosophy & Definitions** for an explanation of use of force terms.
- Refer to **DPM 2.1.5 Use of Force** for force options and guidelines.

## 2. DEFINITIONS

- **Air Cartridge**
  - A replaceable cartridge for the ECD which uses compressed nitrogen to fire two barbed probes on thin connecting wires sending a high voltage/low current signal into a subject.
- **AFIDs**
  - Confetti-like pieces of paper that are expelled from the cartridge when fired. Each anti-felon identification (AFID) tag contains an alphanumeric identifier unique to the cartridge used.
- **Drive Stun**
  - A function of the ECD is to stun a subject by making direct contact with the body after the air cartridge has been expended or removed.
  - A drive stun does not override an individual's motor responses but can be used for pain compliance. Use of the ECD with an air cartridge is preferred.
- **Electronic Control Device (ECD)**
  - An electro-muscular disruption device that disrupts the body's ability to communicate messages from the brain to the muscles causing temporary motor skill dysfunction to a subject.
- **ECD Deployment**
  - An officer has "deployed" an ECD if the officer has displayed the test arc, fired the probes or applied a drive stun. This does not include displaying the test arc to determine if an ECD is operational.

## 3. GENERAL GUIDELINES

### Authorized Equipment

- Authorized members shall only use a Department owned and issued Taser. This is the only ECD authorized for use by the Department.
- Tasers are issued to Department members by the Training Section.
- Only those members who have satisfactorily completed the Department's approved training will be authorized to carry and to use the ECD.

| MESA POLICE | Electronic Control Device | DPM 2.1.35 |
|---|---|---|
| Department Policy Manual | (ECD) Protocols | Revision Date 3/14/2017 |
| Approved by Chief of Police | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | Page 2 of 6 |

- District Coordinators are responsible for:
  - The possession and issuance of unused cartridges.
  - All cartridges shall be logged into the District's log sheet.
- Completed log sheets shall be sent to the Training Section.

**Authorized Use**

- An ECD should only be deployed when reasonably necessary, consistent with **DPM 2.1.5 Use of Force**, to subdue or incapacitate a subject in order:
  - To prevent violent behavior; or
  - To prevent physical harm to the officer or another person; or
  - In response to threats of physical injury to himself/herself or of other persons; or
  - To prevent a subject from committing suicide.
- Members may use an ECD against dangerous animals.

**Deployment Factors**

- An employee authorized to carry an ECD must be able to articulate the following three (3) core factors when deploying an ECD:
  - The severity of the crime at issue; **and**
  - Whether the subject poses an imminent threat to the safety of the employees or others; **and**
  - Whether the subject is actively resisting arrest or attempting to evade arrest by flight.

## 4.  RESTRICTIONS

- Members shall not use an ECD on a subject:

  - As a form of coercion or punishment.
  - Known to be or visibly pregnant, elderly, very young, visibly frail, or disabled unless deadly force is the only other option.
  - In an elevated position where a fall is likely to cause substantial injury or death.
  - In a location where the subject could drown.
  - In any environment where an officer knows that a potentially flammable, volatile, or explosive material is present (including, but not limited to OC spray with alcohol or other volatile propellant, gasoline, natural gas, or propane).
  - Operating a motor vehicle or motorcycle when the engine is running or on a bicycle or scooter in motion, unless the subject is displaying overtly assaultive behavior which cannot be reasonably dealt with in any other safer fashion.

| MESA POLICE<br>**Department<br>Policy Manual** | **Electronic Control Device<br>(ECD) Protocols** | **DPM 2.1.35**<br>Revision Date<br>3/14/2017 |
|---|---|---|
| Approved by:<br>**Chief of Police** | | Page:<br>**3 of 6** |

- o Handcuffed or otherwise restrained, unless displaying assaultive behavior which cannot be reasonably dealt with in any other safer fashion.
- o To awaken him/her if unconscious or intoxicated.
- o To prevent the destruction of evidence.
- o To escort, prod, or jab.
- o To gain the attention or voluntary compliance of a group of people except as outlined in crowd dispersal guidelines as outlined in **FFS 1.2 Field Force System.**

## 5. DEPLOYMENT PROCEDURES

- When practical and reasonable, a verbal announcement of the intended use of the ECD and the display of the red aiming laser at the subject shall precede the application of an ECD in order to:
  - o Provide subject with a reasonable opportunity to voluntarily comply.
  - o Provide other members and individuals with a warning that an ECD may be deployed.
- Do not place self, or others, in jeopardy in order to deliver such warnings.
- When practical have another officer present with available lethal force, when utilizing the ECD.
- Members should not leave cover or put themselves in an otherwise tactically unsafe position in order to deploy the ECD.
- Deploy ECD for one standard discharge cycle.
- Reassess the situation to determine if further applications of the ECD are necessary in order to place the subject into custody.

**Air Cartridge (Attached)**
- The primary target area is the back of the subject, below the neck line.
- Secondary targets include, in order, the side and the front (lower center mass) of the subject.
- When encountering subjects wearing heavy or loose clothing on the upper body, the legs should be considered as a target.

**Drive Stun**
- The primary target area is the back of the subject, below the neck line.
- Secondary targets include, in order, the side and the front (lower center mass) of the subject.
- Once probes have been deployed the groin is an acceptable target area for drive stun.

**Handling Subjects After Deployment**
- Do not approach the subject until it can be done safely in accordance with any other high-risk arrest.

| MESA POLICE | Electronic Control Device | DPM 2.1.35 |
|---|---|---|
| Department Policy Manual | (ECD) Protocols | Revision Date 3/14/2017 |
| Approved by: Chief of Police | | Page 4 of 6 |

- Members should take advantage of the window of opportunity while the subject is under the effects of the ECD to handcuff and take the subject into custody.

## 6. POST DEPLOYMENT PROCEDURES

**Medical Assistance**

- As soon as it can be done safely, members shall have medical personnel examine any subject exposed to an ECD activation.
- If the probes penetrate the skin, the puncture site should be brought to their attention.
  - Only medical personnel shall remove the ECD probes that are embedded in soft tissue areas such as the neck, face, female breast and groin.
  - Decisions to remove from other areas are at the discretion of the member carrying the ECD.
- Use a restraint technique that does not impair the subject's respiration, especially in possible excited delirium cases.
- Notify Detention Staff if an ECD was deployed on the subject being booked into MPD Holding Facility.

**Documentation**

- Anytime an ECD is deployed (except in training activities), whether a subject is struck or not, members shall notify a supervisor and document the use of force incident in a Department Report (DR) and DPM 2.1.45F1, Use of Force Report, regardless of injury as outlined in **DPM 2.1.45 Use of Force Reporting Protocols.**

**Evidence Collection & Handling**

- Probes that have been used should be treated as a biohazard and handled accordingly, unless needed as evidence.
- In cases where a subject exposed to ECD activation received serious physical injury, death, or displays behavior associated with excited delirium, the contents of the ECD cartridge shall be collected as evidence.
- The contents of the cartridge must be collected by a Crime Scene Specialist (CSS) or as directed by the scene supervisor.
  - The collected items must include: probes, wires, cartridge body, blast doors, and at least one AFID.
  - The collected probe wires from a deployed cartridge should not be wrapped. Gather the wires and other materials and place in an evidence bag.

| **MESA POLICE** | **Electronic Control Device (ECD) Protocols** | **DPM 2.1.35** |
|---|---|---|
| Department Policy Manual | | Revision Date 3/14/2017 |
| Approved by: Chief of Police | ▓▓▓▓▓▓▓▓▓▓▓ | Page 5 of 6 |

## 7. CARRYING & SECURITY

**Carrying**

- All members working in a uniform (sworn or civilian) capacity, who have been assigned an ECD, shall carry the ECD on their person(S) while on duty.
- The carrying of an ECD is optional for detectives, unless the detective position has been designated for mandatory carrying of ECD.
- The ECD shall be carried in:
  - In a secured manner on the support side of the body.
  - An ECD holster or a secured pouch on the vest.

**ECD Authorized Positions**

- The Training Section Lieutenant maintains a list of positions that have been authorized by the Chief of Police to carry an ECD.
- Members who leave an authorized ECD position shall return their assigned Taser, ECD holster, and cartridges to the Training Section once they leave their authorized position.
- All Tasers shall be inspected and information downloaded by the Training Section prior to reissuing the Taser.

**Security**

- Members assigned an ECD will ensure due care in the security of all Department issued ECDs.
- Any Department issued ECDs not in the immediate possession of the member(s) are to be locked:
  - In a secured location within a Mesa PD building; or
  - In a personal vehicle in a locked garage; or
  - In the member's home when the member is not working.
- Do not secure ECDs in an assigned Department owned/leased vehicle when not working.

## 8. INSPECTIONS & REPAIRS

**Inspections**

- Members carrying ECDs will spark test and inspect their ECDs prior to the start of their shift.
- ECD inspections shall be conducted on an annual basis by the Training Section to ensure that all ECDs are operable, to conduct information downloads, and perform any necessary maintenance or repairs.

| MESA POLICE<br><br>Department<br>Policy Manual | Electronic Control Device<br>(ECD) Protocols | DPM 2.1.35<br><br>Revision Date<br>3/14/2017 |
|---|---|---|
| Chief of Police | | 6 of 6 |

**Maintenance/Repairs**

- An ECD requiring outside maintenance or repair must be taken to the Training Section and the internal data must be downloaded before the ECD is serviced.

**9.  TRAINING**

- All members issued a Department ECD shall attend training and recertification as directed by the MPD Training Section.
- The Training Section manages the ECD program and is responsible for updating, ordering, and distributing equipment as needed.
- The Training Section keeps any and all records on the ECD program and completes an annual status report to the Chief of Police.

References:

- DPM 2.1.1 Use of Force Philosophy & Definitions
- DPM 2.1.5 Use of Force
- DPM 2.1.45 Use of Force Reporting Protocols
- FFS 1.2 Field Force System

Mesa/Spencer 000167