THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE CJVLR 5.4, 7.1(a)(4)
(Rule Number/Section)

FILED ___ LODGED
___ RECEIVED ___ COPY
DEC 28 2020
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT OF ARIZONA

Cole J. Spencer, | CV-20-00385-DGC-CDB
(plaintiff) |
|
V. | Plaintiffs "Disputed" Statement of
| facts in Support of opposition
Aaron Pew et al, | to Defendants Motion for Summary
(Defendants) | Judgment

Pursuant to LRCiv 56.1 Plaintiff submits the following "separate statement of facts" in opposition to defendants motion for summary Judgment. Each paragraph corresponding to the defendants [30] statement of Facts.

\* Attention \*
[Exhibit 22] is in a separate manilla envelope and is the main source of most of the disputes made in this response. However. There are [4] separate videos on one disc. And there is no way to tell the videos apart from eachother. Enclosed in the manilla envelope with the CD is a "Key" to help ease the confusion.

"Plaintiffs Disputed Statement of Fact" (PDSOF)
"Defendants Statement of Fact" (DSOF)

# 1 (DSOF) = No Dispute

1

#2 (DSOF) - No Dispute

#3 (DSOF) - No Dispute

#4 (DSOF) - No Dispute

#5 (PDSOF) - This claim is disputed. Defendants claim that Mr. Spencer was looking for a potential escape route. This is a subjective opinion. These officers are not mind readers. [Exhibit 1 - paragraph 4 and 6] explains exactly why Mr. Spencer was nervous.

#6 (DSOF) - No Dispute

#7 (DSOF) - No Dispute

#8 (DSOF) - No Dispute

#9 (DSOF) - No Dispute

#10 (PDSOF) This claim is disputed. Rozema never told Spencer what he was under arrest for. Rozema simply told Spencer "yer under Arrest CJ." [See Exhibit 1 - paragraph 7] Also, the defendants make it very clear to the officers who respond they do not know who the plaintiff is. This is because of how far overboard they went with their use of force.

2

If it would have came out that they knew who the plaintiff was, it would look premeditated. see [Exhibit 22]

#11 (PDSOF) Plaintiff disputes this claim. Plaintiff put his hands behind his back and Rozema grabbed his left wrist and bent it upward. When Rozema said Spencers name, Spencer ponicked and pushed Rozema with his left shoulder to create separation between the two of them. [see Exhibit 1 - paragraph 7 and 8] Rozema's actions were unnessecary. Rozema never lost control of plointiffs left wrist. Spencer was never able to "run and was not trying to run, but rather create separation from what he perceived was a toxic situation. *** Officer Pew told a completely different story in his original [IR] Incident Report [Exhibit 2 - lines 15-18]. There he states, "...place his hands behind his back. Cole started to turn [then] made a fast movement towards the north as if he was trying to run. Officer Rozema was able to grab an arm to prevent Cole from getting away. As soon as Cole realized officer Rozema had a hold of his arm, he turned and impact pushed officer Rozema in the chest...." In the version that the defendants submitted in their motion for Summary Judgment as well as their Declarations, they both make it clear that the shove happened first, then Spencer ran in a North direction. Pew changed the order of events. This is just one of many changes and mixups in their story.

3

#12 (PDSOF) This claim is disputed. As mentioned in the previous paragraph, Spencer's left wrist [left wrist] never broke free of officer Rozema's grasp. [see Exhibit 1 - paragraph 8] Mr. Spencer never "ran away from the scene" so it would have been impossible for Rozema to have ever "caught up" to the plaintiff, as Mr. Spencer was right in front of him. A quick examination of [Exhibit 22] any observer can easily conclude that the beating wasn't more than 10ft from the vehicle.

#13 (PDSOF) This claim is disputed. The following is very confusing as I will be cross-referencing the defendants claims using both defendants original "Incident Reports" as well as both their Declarations [Exhibits 2, 3, 4, 5]. Also, quoting lines from defendants motion for Summary Judgment [Exhibit 6]. *** The defendants are claiming that Mr. Spencer "flipped over onto his back and swung his fist". This is false. Rozema painted a completely different picture in his original report, see [Exhibit 4 - lines 12-20]. First off, rozema never mentions that Spencer threw a punch. Secondly, All any observer has to do is compare the "kick" to Mr. Spencers face in [SOF 15] and that same [kick] in Rozema's report. In Rozemas original report he states that "officer Pew applied a strike with his foot to cole's face." Rozema then goes on saying that he used his right knee to the [back] and left side of [coles] face. Which would imply that Spencer was face down when Pew applied the strike to coles face.

4

This is also evident on lines [17 and 18]. Rozema says "Pew tased cole several times"... then says "...I do know he tased cole in the neck and [BACK] area." How could Pew tase Spencer in his back if Spencer was "flipped over on his back throwing a punch." To top it all off, on [lines 19 and 20] Rozema goes on to say "Cole was able to roll over to his back despite me and Pew's best efforts to control him." So now we know that when Pew kicked spencer in his face, we have a clear understanding that Spencer was on his stomach, contradicting their claims in [SOF 13 and 15] which implys that Spencer was on his back and threw a punch. The point of all of this is to point out that spencer was on his stomach when Pew kicked spencer's face, not on his Back like the defendants are now claiming. The "Punch" was just an add-on to their story. Also this part of the incident is layed out in the "plaintiffs Declaration" [Exhibit 1 - paragraphs 8, 9, 10] *** The following ⬤ ⬤ is an examination of the "punch" itself. The defendants have made claims in both of their original reports, Declorations and Motion for Summary Judgement, [all] of which are differant. The first is in [Exhibit 2 - lines 19 and 20] Officer Pew states "I observed cole throw [a] punch which [appeared] to have hit Officer Rozema." Then in Rozemas report [Exhibit 4 - line 13] He states "cole Flung his [arms] back at me and Nearly struck my face". And never mentions any type of punches. Now in their #13 SOF they say "the

5

plaintiff then flipped over onto his back and swung his [Fists] at Rozema's face [several] times. How does it go from [arms] to [fists] and from [a] punch to [several] punches. But the officer who was supposedly being punched at, never mentions it in his original Report. These added threats of resistance weren't added till Pew wrote his report 14 days after the incident. Or even more puzzling is in the defendants motion for summary Judgement [Exhibit 6 - page 5 - lines 12-16] and also [lines 17-21]. They now state that Mr. Spencer "pushed and [struck] Officer Rozema in the face". Now implying that Spencer actually made contact with one or multiple punches. Everytime the stakes raise in this case, so does Mr. Spencers level of resistance. There was never a punch or any kind of strike made by Mr. Spencer and that is clearly stated in [Exhibit 1 - paragraph 17] ****

Beyond the many inconsistancies in the defendants stories, there is another set of facts that contradict their current version of this incident. And these facts cannot be disputed. Unfortunatly for the defendonts, this case was already decided in the superior court of Arizona. Mr. Spencer was charged with Aggrevated Assault on Jacob Rozema. He pled guilty to that crime. At Spencers settlement conference he entered into a plea. The transcrips of this hearing are attatched as [Exhibit 7]. The Judge (Kathleen Mead) asked legal counsel for Mr. Spencer, (Mathew Leathers), to give a "factual basis" for the crime of Aggrevated Assault. SEE

⑥

[Exhibit 7 - page 12, line 19 through page 14 - line 10]. Mr. Leathers said the following, "He pushed the officer and made a sudden movement." There were no punches, No kicks, No separate acts of aggression that have now surfaced, now that Pew and Rozema are defendants in a civil matter. There time for that has come and gone. **** Defendants are also claiming that Mr. Spencer attempted to [throw] Rozema off of him. This is false. Nowhere in their original reports [Exhibit 2 and 4] Do they ever mention that Spencer attempted to "throw" anyone off of himself. This is a self-serving [Add-on] to raise Spencers level of resistance.

#14 (DSOF) - No Dispute

#15 (PDSOF) - This claim is disputed. Defendants portrayal is inaccurate, and misleading. To say that Pew [struck] Spencer in his head in an attempt to subdue him, is not appropriate. [Exhibit 2 - line 28] Pew states that he delivered 3 kicks to Coles face and shoulder. Also see [Exhibit 1 - paragraph 9]

#16 (PDSOF) This claim is disputed. [See Exhibit 1 (in its Entirety] From the time after Mr. Spencer pushed Rozema, till the incident was over, mr. Spencer was not resisting and for sure was not Fighting. The Defendants were not following their protocols for effectuating an arrest. So how could Spencer be resisting Arrest, when what the defendants

⑦

were doing could not be characterized as on arrest. He was simply moving to avoid being hit. [See Also Exhibit 22] The Body-Cam footage paints a different scenario than what the defendants portray. And yes, the defendants Did order Spencer to give up his hands, and Spencer told the officers that his hands were locked up, as was most of his body. At this point in the incident, Spencer had been Tazed 4 times out of a total of 7, and Spencer was experiencing N.M.I. Nuero-Muscular Incapacitation. [See Exhibit 1]

#17 (PDSOF) This claim is disputed. Pew and Rozema admit to hitting Spencer many times in their reports. [See Exhibit 2 in its entirely]. He [Pew] admits to applying knee strikes on 2 separate occasions, each occasion consisting of 3-4 knee strikes. Also Admits to slamming Spencers Head into the ground. as well as kicking Spencers face 3 times. Also, see [Exhibit 22 - video's A B and D]. The Defendants portrayal that they struck Spencer is vague. And again, Spencer was in Survival Mode, not resisting and Not fighting. [See Exhibit 1 - paragraph 10] It is also important to point out that with every application of force that the defendants applied, they never aknowledge that what they were doing was affecting Mr. Spencer. This is easily prooven false by [Exhibit 22 - video A] In this video any observer can easily conclude that Spencer is screaming and in extreme Distress.

⑧

#18 (PDSOF) This claim is disputed. The way the defendants characterized this statement is misleading as it implies that Mr. Spencer was tased only once. This is not true. See [Exhibit 8]. This is the usage history from the taser that was used in this incident. [Exhibit 8 - page 18 - Seq. #509-523 is the data from this incident. At [seq. 509 to 510], under [cartridge Info] it says that [c1 and c2] were both deployed. Each cartridge contains 2 probes that are shot into the skin. So at this time, Spencer had [4] taser probes shot into his body. The use of force report [Exhibit 9][page 4] lays out these facts. [Exhibit 8 page 18 - Seq #509-512] are [4] separate Deployment cycles lasting a total of 19 Seconds. [Exhibit 23] Is Mesa PD training Manual pertaining to the use of ECDs. It should be noted that this manual was printed off the internet because the defendants refused to produce a copy of the 2017 taser re-certification course, but there are not any differences or changes to the 2017 version and this 2019 version. As you will see, the [seq #509 to 512] were continuous. There were no breaks in between each discharge cycle. [Exhibit 23 - page 5] clearly states the following: "Deploy [one] standard Discharge cycle." Then it goes on to say: "Reassess the situation to determine if further applications of the CEW are Necessary." This is a clear violation of their own policy. It also states that "Avoid repeated or continuous exposures beyond 15 Seconds absent reasonably perceived immediate threat and increased justification. See [page 8]. Mr. Spencer was excessivly tased by the defendants.

9

This is only the first [four] discorge cycles. There were [7] total. [See Also Exhibit 1 - paragraphs 10-12-14]

#19 (PDSOF) Plaintiff disputes this claim. This claim by the defendants is false. But even if it were true, why would you keep tasing a suspect (7 times!) if it was haveing zero effects on the suspect? The taser shocks were having serious effects on Mr. Spencer. [see Exhibit 22 - video A - 01:00 to 01:12]. This is in between the 5th and 6th taser shocks. Mr. Spencer tells the Defendants, "O.K. - O.K." "Cant move my Hands" "I have a pacemaker." Mr. Spencer was pleading with these officers as well as screaming throughout [video A]. This is all included in [Exhibit 1 - paragraph 10 and 12]. Spencer also explains the effects that the taser was having on his heart in paragraph [12 and 14]

#20 [PDSOF] This claim is disputed. This is Fabricated and false. [Exhibit 2 and 4] when completely read, ony a reoder can conclude that nowhere in the writing, did Pew and Rozema ever claim that Spencer "ripped" 4 taser probes out of his body and toss them aside. In [Exhibit 2 - line 3-7 on page 2] Pew states... "deployed a set of probes to coles legs [and] immediatly to his upper body... I held the trigger of the taser and [moved it to contact another part of his body...] Pew pressed the tip of the stun-gun to spencers carrotid artery, which is an option for the taser's operator. (To tase a suspect in

10

probe mode and simultaneously apply a Drive-stun shock.) At this point Spencer was able to move the stun-gun off his neck as it was crushing his throat and making it hard to breath. [See exhibit 1 - paragraph 10]. Also see [Exhibit ZZ - video A - 07:14] At the [07:14] mark, 'pause' the video. There you will see, on mr. Spencers hip, one of the taser probes on the outside of spencers ponts. Also in [video A at 08:05 to 09:15] There are separate instances that you can see the wires from the [4] probes all tangled in the handcuffs, and the defendants cut the probes loose.

#21 (PDSOF) This claim is disputed. Defendants are claiming that they tased Spencer 3 additional times in "Drive-stun" mode. This is false. As mentioned in [Exhibit 1 - paragraph 10 and 14] the defendants were pressing the tip of the stun-gun to Spencers artery and body as well as shocking him through the "probes." Every shock was categorized as "Probe mode." [Exhibit 8 - page 18 - Seq 509-523] will all show that the [Event Type] all read "Trigger" which is probe mode as it also says "Deployed." When Drive-stun is used in isolation without the probes, it will read [ARC] as it does on [Exhibit 8 - page 18 - Seq 505]
*** Also, the order in which the defendants are portraying in this incident is false. The first mention of their taser is in [SOF 18]. and ends in [SOF 21] This is innaccurate. Their were 7 seporate Discharge cycles, all of which were not completed at the same time. Some were minutes apart. Fortunatly, any observer can use the Taser usage history [Exhibit 8] and the

11

Video A [Exhibit 22] to figure out exactly what times Spencer was being tazed during this incident. To start, Go to [Exhibit 22 - video A - at 00:09 and press pause] There on the left side of the screen you can see Officer Pew running around the vehicle where he admits to kicking Spencer 3 times in his original Report. This is just so that the observer can understand and have a benchmark as to how far into the incident the arriving officer (Shall) was at the time he arrived. The defendants have previously claimed that only half of the incident was on camera. This is not true. Next. Go to [Exhibit 22 - video D - at 00:08] Here you will hear Rozema say "Give him another ride" and Pew picks up the tazer and sticks the tazer to Spencers carrotid artery and holds it there for [13 seconds]. This is also laid out in [Exhibit 8 - page 18 - Seq 521] This was the final discharge cycle of the incident. [seq 521] occured at (17:36:02). We also know that [seq 509] began at [17:33:43]. This is a 2 minute and 19 second gap between the last Discharge cycle and the first. lets put the 2min 19 sec Gap aside for a second. Now go to [video A]. Go to [02:45] and you will hear Rozema say "Give him another ride". So now we know that the Final discharge [seq 521] occured at [02:45 of video A]. Now lets rewind that 2min 19sec and go back to the initial Discharge cycle [seq 509]. As you can see, Spencer was being tazed shortly ofter Pew ran around the vehicle at [00:26] all the way to [00:44]. *** The reason that this was mentioned in this dispute and not in the "Additional

12

Material Facts" was because this info. shows that there were considerable gaps between the taser deployments, yet the defendants explained their use of their taser from (SOF 18-21) and then claim the MCSO Deputies showed up in (SOF 22), After they were done using the tazer. This is false. The defendants' recollection of this event and their portrayal of their actions is false.

#(PDSOF)#22. This claim is disputed. Defendants claim that [2] MCSO Deputies arrived on scene. This is false. There were 3 sheriffs deputies present. [Exhibit 10] clearly reveals that besides deputies and Macklin, there was also a sheriff present named Sergeant Clork. Also see (Exhibit 22 - videos A, B, C, D).

#23 (DSOF) - No Dispute

#24 (DSOF) - No Dispute

#25 (PDSOF) - This claim is disputed. Defendants claim that Spencer was on powerful drugs is false and merritless. [Exhibit 1 - paragraph 19] clearly lays out that Mr. Spencer was not on anything at the time of this incident. Plaintiff also Disputes the fact that the defendants claim Spencer had a Heightened pain Tolerance. This is easyly proofen false by watching [Exhibit 22 - video A]. Plaintiff also disputes the claim that he had Super-Human strength. The First opportunity that The defendants got to recieve help, they

13

Turned down the assistance by informing Deputy Shall to "Keep an eye on the Driver." If Mr. Spencer had super-Human strength like the defendants claim, they would have accepted Shall's Help. [Exhibit 10 - page 1]

#26 (PDSOF) Plaintiff Disputes this claim. Spencer states in his Declaration [Exhibit 1] that he was not under the influence of any drugs at the time of the incident. See [Exhibit 1 - paragraph 19]

#27 (PDSOF) This claim is disputed. This is the most important claim that the defendants make in this case. They have based all of their case law off the [fact] that Mr. Spencer was alledgedly on DMT and Hullucinating at the time of this incident. These claims are false. [Exhibit 11] is the Medical Records from Bonner Baywood Hospital, where Spencer was taken via ambulance immediatly following the beating. The first mention of [D.M.T] is made by Rozema in his original report. See [Exhibit 4 - page 2 - lines 21-27] Rozema claims that he read Spencer his "miranda" at [19:13] and Spencer made a detailed statement as a result of being interrogated after the miranda warning. The following is a detailed synopsis of the records that will show that "Miranda" was not clearly established at [19:13] during this alledged conversation and in all likelyhood, Did not take place at all and is a complete self-serving fabrication to propetuate a narritive that Mr. Spencer was "out of it" on Hullucinogens. The Defendants claim that

14

"Spencer said he had used DMT [4] minutes prior to being pulled over at [Jaimies House]. The medical Records [Exhibit 11 - page 1] will show that this was NOT the first mention of DMT. In fact, [page 1] shows that at [18:25 MST] (48 min. prior to the alledged 'DMT' statement by spencer), Dr. Joel Betz mentions that "Pt is altered on a drug called DMT [per Him]". Dr. Betz was conducting an initial examination of Spencer. On [page 1], Highlited is the [History Source] section. This is the list of people, by which Dr. Betz was receiving the medical information that is contained in these medical records. listed there is: 'Patient' and 'Police' (Spencer and Pew, Rozema). The question to ask is: why would the Defendants be listed as a source pertaining to Spencers medical history? This question can be answered by going to page [25] of [Exhibit 11]. At the bottom of the page, the [Glasgow Coma Score] was conducted at [18:19] and [18:25], which is the exact time that Dr. Betz made his statement on [Page 1] about the "DMT". The "Glasgow Coma Score" is a gauge for medical personnel to rate a patients level of consciousness. The score ranges from 0-15. As you will see Mr Spencer's Score was [0]. Spencer was completly unconscious at the time Dr. Betz made his statement on [page 1]. That means that the Defendants took it upon themselves to speak for Spencer. A self-serving fabrication that would lay the ground work for their Hullucination narrative. Think about what was going through their minds as they sat in the emergency room looking at Mr. Spencer.

15

See [Exhibit 24] and [Exhibit 12-page 2-21]. Imagine how overboard that they must have realized that they took their use of force in this incident. So much so that they made up a story about spencer being on hullucinogens to help justify their actions. This is not the only lie that was told pertaining to this "DMT" statement. The following is an examination of Spencers Mindstate and medical Diagnosis immediatly preceding the [19:13] claim that Spencer alledgedly made after miranda was read. Any reasonable minded trier of fact could easily conclude that not only is it highly unlikely that spencer would be able to wake up out of a dead sleep and make such a detailed statement like Rozema claims in his Incident report [Exhibit 4-page 2-lines 21-27], but it is also Highly probable that miranda was never read at all! — As mentioned earlier, at [18:25] Mr. Spencer scored a [zero] on the 'Glasgow Coma Score' and was unconscious. See [Exhibit 11-page 25] Also on the top of the same page in the [Free-text] section it states that Spencer had an [altered Mental status]. Then on page [5] at [18:42] the Doctor states that "patient felt afraid or concerned about safety" and also states that Spencer was "cognitivly unable to answer". At the bottom of that same page under the [Nuerological] section the Doctor states, "patient was somewhat slurred speech and Mildly Ataxic on examination." On page [6] the Doctor states that Spencer had, "Not appropriate Mood and Affect" and "Not normal Judgement". Mr. Spencer had taken over 25 knees, kicks, and punches to the head and

16

face, as well as having his face slammed into the ground, endured 7 electrocution cycles for a total of 36 seconds and was strangled till he was unconscious. The liklihood of Spencer waking up and giving a detailed explaination like the one that Rozema is claiming does not seem possible. In fact if you look at the crime scene photos [Exhibit 12 - page 1-21] you will see that Spencer was completly asleep through all the pictures and did not move. As you will see on page [1] the C.S.S. employee [C. Zomojtel # 13553] began taking photos at [18:40]. There were 60 photos taken of Spencer and both defendants. If Zomojtel started his examination at [18:40] then he must have started with the defendants first, because we know from the medical records that the doctor was examining Spencer at [18:42] on [page 5]. In any event, [exhibit 13] (page 1) shows that Zomojtel finished taking the [60] photos at [19:05], [8 minutes] prior to Rozema's alledged Miranda reading. As we can see in the photos, Spencer was not conscious. [See Exhibit 12]. *** Also, the following is a statement that the defendants made to the hospital staff [27] minutes prior to the alledged miranda statement. See [exhibit 11 - page 2]. There the doctor states at [18:46] that "Police reports that [He] was more alert on their arrival to the scene, However, the patient is having a more difficult time answering Questions." So, [27] minutes prior to reading Spencer his miranda warning, the defendants admit that Spencer was having trouble answering Questions, and that he was alert when they arrived on scene of the incident. This

17

raises 2 issues and key points. ① It completly debunks their theory and claim that spencer was high on hullucinogens at the time of the incident. People who are on hullucinogens are not charactorized as "Alert". It also rules out the possibility that drugs had anything to do with Spencers medical conditions and mindstate layed out in the banner Medical Records. In other words, whatever altered mindstate that the Doctors documented in the records, was a direct result of the beating, not drug use. ② This statement raises doubts in the defendants character, integrity and their underlying motives. If the defendants admit that spencer was having a hard time answering questions, then why would they attempt to speak with him [27 min] later, or even more, attempt to read something as important as miranda warning and actually beleive it was established? A reasonable minded officer would not have done this. It is easy to conclude that this whole conversation, never took place, likely because spencer was asleep.

#28 (PDSOF) This claim is disputed. Defendants Pew and Rozema possess zero evidence that that could lead them to beleive that anything found in the vehicle in question, let alone a backpack with drugs, belonged to Mr. Spencer. First, and most importantly, Rozemas original Report [Exhibit] [4]-page 2 -line 27], mr. Spencer denies that the drugs found were his. Spencer was initially charged with the drugs by the defendants, but the charges were dismissed at spencers Initial court proceeding as the

18

Judge found "No probable cause". Spencer was a passenger in the vehicle and the vehicle was not in his name. In addition, the drugs found were analyzed in the forensic lab. [Exhibit 14-pages 1-5] are the documents from the analysis. It is easy to conclude from a breif scan of these pages that there is [zero] evidence linking Mr. Spencer to these items. Another key fact is that the defendants claim in (SOF28) that the drugs were found in the "plaintiffs backpack". This is false. If the defendants honestly beleived that this "backpack" was the plaintiffs as they say, then why wasn't it kept with Spencers property? [Exhibit 15] is the plaintiffs "Prisoner Property Inventory Form". There is no mention of a backpack. This backpack did not belong to the plaintiff. This is yet another self-serving statement fabricated by the defendants.

#29 (DSOF) No Dispute

#30 (DSOF) No Dispute

19